UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| ROCHE DIAGNOSTICS GMBH and ROCHE MOLECULAR SYSTEMS, INC., | x : : : |
| Plaintiffs and Counterclaim Defendants, | : : : |
| v. | No. 04 CV 4046 (RJS) : : |
| ENZO BIOCHEM, INC. and ENZO LIFE SCIENCES, INC. | : : : : |
| Defendants and Counterclaim Plaintiffs. | : : : x |

---

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF DEFENDANTS ENZO BIOCHEM, INC. AND ENZO
LIFE SCIENCES, INC.'S MOTION FOR RECONSIDERATION OF
<u>THE COURT'S DECEMBER 6, 2013 MEMORANDUM AND ORDER</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT...................................................................................................................................2

      A.     Enzo Did Not Abandon Its Contract Claims Against Roche On Unlisted Products..........................................................................................................2

      B.     Enzo Pleaded Its Claim For Nonpayment After Expiration of Certain Patents..............................................................................................................6

      C.     Roche Disregards The Effect Of Section VII Of The Agreement Which Precludes Summary Judgment On The Manufacturing Claim ..............................8

CONCLUSION................................................................................................................11

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bristol-Myers Squibb Co. v. Matrix Labs. Ltd.*,
   12 CIV. 5846 PAE, 2013 WL 4056219 (S.D.N.Y. Aug. 12, 2013) ........................................10

*Brulotte v. Thys Co.*,
   379 U.S. 29 (1964)................................................................................................................8

*Elevator Motors Corp. v Leistritz AG.*,
   No. CV-88-0005(CBA), 1992 WL 91904 (E.D.N.Y. Apr. 20, 1992) ....................................10

*Empire Gas Corp. v. Am. Bakeries Co.*,
   840 F.2d 1333 (7th Cir. 1988) ..............................................................................................9

*FLLI Moretti Cereali v. Continental Grain Co.*,
   563 F.2d 563 (2d Cir. 1977)..................................................................................................3

*GAF Corp. v. Eastman Kodak Co.*,
   519 F. Supp. 1203 (S.D.N.Y. 1981)......................................................................................8

*Goodwine v. Conn. Dep't of Children and Families*,
   No. 08 Civ. 532 (D. Conn. Jan. 14, 2011) .............................................................................7

*GRM Corp. v. Miniature Precision Components, Inc.*,
   No. 06-15231-BC, 2008 WL 82224 (E.D. Mich. Jan. 8, 2008)............................................10

*Honeywell Int'l Inc. v. Air Prods. & Chems., Inc.*,
   858 A.2d 392 (Del. Ch. 2004)...............................................................................................9

*Jones v. Spitzer*,
   No. 01 Civ. 9754 (HB)(GWG), 2002 WL 737649 (S.D.N.Y. Apr. 26, 2002) .......................7

*Lyman v. Pfizer, Inc.*,
   No. 09 Civ. 262, 2012 WL 2970627 (D. Vt. July 20, 2012) .................................................7

*Miller v. Universal Pictures Co.*,
   10 N.Y.2d 972 (1961) ...........................................................................................................9

*Simmons v. Abruzzo*,
   49 F.3d 83 (2d Cir. 1995) .....................................................................................................8

*U.S.A. Famous Original Ray's Licensing Corp. v. Tisi's Pizza and Pasta Inc.*,
   No. 09 Civ. 5517 (RMB)(AJP), 2009 WL 4351962 (S.D.N.Y. Dec. 1, 2009).......................7

*Wynder v. McMahon*,
   360 F.3d 73 (2d Cir. 2004)....................................................................................................8

*XO Communications, LLC v. Level 3 Communications, Inc.*,
   948 A.2d 1111 (Del. Ch. 2007)...........................................................................................10

**PRELIMINARY STATEMENT**

Enzo's opening brief ("Op. Br.")[1] details the several items of fact and controlling law that Enzo contends the Court overlooked in its Order: (1) Roche had not sought summary judgment that unlisted products, such as Elecsys and Taqman, were *per se* not covered by the Agreement and, therefore, Enzo had not abandoned its claims; (2) Enzo sufficiently pled Roche's failure to pay throughout the contract term to give notice to Roche of said claim, which the parties argued on the merits and Roche never contended was unpled; and (3) the plain contract language prohibiting Roche's manufacture of Group A PRODUCTS. In its Opposition ("Opp'n"), Roche desperately seeks to cling to the Court's rulings by ignoring the actual record and relying on revision and new arguments not previously advanced.

Roche now recasts its prior arguments in a vain attempt to seize upon arguments they never made. Roche's motion did not focus on unlisted products being outside the Agreement. On the contrary, it stated that Enzo's argument that unlisted products covered by Enzo patents are "PRODUCTS" subject to the Agreement missed the point. Roche instead argued that its conduct was not in breach whether the products were listed or not. To the extent Roche alluded to the issue of unlisted products, Enzo addressed that issue, (*see*, *e.g.*, SJ Opp'n at 4 ("The fact that a Product was not listed initially, does not … mean it does not fall under the Agreement.")), while focusing on the arguments actually advanced by Roche. Roche, having taken unlisted products off the table, cannot now seek summary judgment on a new ground the Court mistakenly provided. Nor can Enzo be deemed to have abandoned an unchallenged claim.

With respect to the Court's holding that Enzo failed to plead a claim for breach of contract based upon nonpayment after patents had expired, Roche mischaracterizes the FAAC.

---

[1] Unless defined herein, all capitalized terms have the meaning from Enzo's Opening Brief.

Roche pretends that all of this claim's allegations are in the "facts section" of the FAAC, without any "nexus" to "the causes of action later identified in the complaint." That is not the case. Enzo squarely gave notice of this claim in its Counterclaim for breach of contract, and Roche has always understood that. Roche now contends Enzo was required to list all of its claims together in a neat and tidy list, but no such requirement is imposed under the rules of notice pleading.

Roche also mischaracterizes the same contract language the Court apparently overlooked in holding that Roche did not breach the Agreement by manufacturing 10-11 grams of Bio-Nucleotides, which are Group A PRODUCTS. Section VII.B of the Agreement (among other provisions) evidences the parties' intention that Roche source all of its requirements for Group A PRODUCTS from Enzo, which excludes the option of self-provisioning.

## ARGUMENT

### A. Enzo Did Not Abandon Its Contract Claims Against Roche On Unlisted Products

In its opening brief, Enzo identified the matters the Court overlooked in holding that Enzo "abandoned" its claim of breach of contract "that Roche sold, distributed, and/or developed Products that were not explicitly listed in the Agreement but that were somehow covered by the Agreement . . . ." (Order at 5). Roche's argument in opposition glosses over the fact that Roche, as the movant, controlled the topics at issue on the summary judgment motion. Roche's fundamental argument at summary judgment was, no matter the product type, whether listed or unlisted, *none* of Roche's conduct regarding *any* PRODUCTS was prohibited. (SJ Mem. 7-9). Indeed, Roche brashly declared that argument as to whether a product was listed or not "misses Roche's point entirely." (*Id*. at 8). Enzo responded to the argument Roche actually put forth, in particular on Roche's violation of the Agreement's use restrictions regarding both listed and unlisted PRODUCTS. (SJ Opp'n at 5-8). Roche now tries to seize upon the Court's *sua sponte*

2

ruling on a basis it had eschewed.  None of Roche's revisionist arguments withstands scrutiny.[2]

Roche first contends that it "made clear several times in its opening brief that it was specifically moving for summary judgment of Enzo's counterclaim in paragraph 54.1," citing pages 4 and 6 to 9 of its memorandum of law.  (Opp'n at 8).  But, page 4 consists merely of a list describing Enzo's non-patent claims followed by an assertion of Roche's "one-size-fits-all" basis for summary judgment:  "the first three claims [FAAC ¶¶ 54.1-3] each fail for one fundamental reason—the Agreement does not bar Roche from engaging in the alleged conduct."  And nowhere in pages 6 to 9 (or its 56.1 Statement) does Roche mention FAAC ¶ 54.1.  Instead, Roche asserts that any argument about whether unlisted products qualify as "PRODUCTS" "misses Roche's point entirely," for the "one fundamental reason" stated above.  (SJ Mem. at 8).

Moreover, Roche's new contention that Enzo failed to address the threshold question of whether certain unlisted products were covered under the Agreement, (Opp'n at 8), is mistaken.  Enzo squarely addressed this issue in its summary judgment opposition.  Enzo asserted that "Products existing at the time of the Agreement's execution are identified in its Exhibits.  Those lists are not exhaustive, and the Agreement expressly provides for the addition of Products, and new products have been added."  (SJ Opp'n at 3-4, internal citations omitted).  Enzo also proffered evidence of Roche's understanding, reflected in the parties' course of conduct, that Roche was required to add to the appropriate exhibit list any new products it developed that fell within the Agreement's definition of "PRODUCT."  (*See id.* at 4; Moore Decl., Ex. 8 at

---

[2] For example, Roche repeatedly cites *FLLI Moretti Cereali v. Continental Grain Co.*, 563 F.2d 563 (2d Cir. 1977), but ignores its holding that reversed a court's grant of summary judgment *sua sponte* and the Second Circuit's admonishment that a district court's power to grant summary judgment "must be exercised with great caution and with care taken to give the parties an opportunity to present materials in opposition to the motion."  *Id.* at 565.  That opportunity was not afforded here because Roche had not sought, and indeed seemingly disclaimed, summary judgment on some of the bases granted by the Court.

RE0854819 ("[Roche] will inform Enzo of all planned new introductions of products falling under the contract at the earliest time point possible."); *id.* at Ex. 6 at 34:18-35:7, 48:5-14, 51:1-7 (Roche's marketing manager testifying to same)). And, to make the point even clearer, Enzo also squarely disputed, "[t]he fact that a Product was not listed initially, does not, as Roche suggests, mean it does not fall under the Agreement." (SJ Opp'n at 4). Roche did not address any of this evidence or even this issue in reply, nor did it contend that Enzo had abandoned a claim. Had Roche genuinely thought there had been an abandonment, it would have said so.

Furthermore, Roche's belated attempt to backtrack from its express carve-out of the Elecsys and Taqman products strains credulity. Roche stated they were "not the subject of this motion" because the Court "set a separate schedule" on the question of infringement of the '830 and '523 patents. (SJ Reply at 1 n.1). Roche's explanation that this footnote simply meant there were no patent infringement issues on those products for the Court to decide ignores that the footnote does not say what Roche contends, and the sentence to which it applies speaks about both "contract and patent infringement claims." (*Id.* at 1). And, given Roche's view, as set out in the parties' joint letter to the Court of December 6, 2013 (Khan Decl., Ex. 11), that a product is "covered by claims of a PATENT" only if it infringes that patent, Roche's statement applies to both sets of claims as the purportedly overlapping issue of infringement remained open.[3]

Roche's newly-raised arguments on the merits are also unavailing. Roche did not have the optional "right to add additional Roche products to one of the Agreement's exhibits." (Opp'n at 14). The Agreement expressly defines Group A, A´, and C PRODUCTS as products "covered

---

[3] For the reasons set forth in the joint letter, Enzo disputes that position. (*Id.*). Nonetheless, Roche's position helps to inform how to understand what it was carving out by that footnote. Roche also contends the language had nothing to do with Taqman. Enzo disputes Roche's depiction of the Court's prior rulings on patent infringement claims, which in any event do not pertain to the contract claims. Both the Elecsys and Taqman products are specifically identified in Enzo's breach of contract claim. (*See* FAAC ¶ 54).

4

by claims of a [Enzo] PATENT . . . ." (Agr. at 1). Products that existed at the time the Agreement was entered into were listed. Any new products – if Roche opted to develop new products – which were covered by claims of particular patents, such as Elecsys and Taqman, were PRODUCTS subject to the terms of the Agreement, whether or not they were listed. Nothing in the Agreement requires a product to be listed in an exhibit to be "covered by claims of a PATENT" and, indeed, the exhibits to the Agreement listed only "*[t]he current* . . . PRODUCTS . . . ." (*Id.*). The Agreement's language the "[Roche] may add" certain products to the exhibits, (*id.* at §§ II.A.4, II.B.2, II.C.2), did not mean that Roche had the discretion to determine whether something was a PRODUCT. Rather, this language recognized that Roche had the discretion as to whether to develop new products covered by Enzo patents. Once it did so, those would then become additional PRODUCTS under the Agreement. Otherwise, Roche could undercut, by inaction, the entire point of broadly defining "PRODUCTS." Moreover, Enzo submitted evidence of Roche's understanding with respect to new products it developed that fall within the "PRODUCTS" definition. Indeed, Roche concedes it developed certain new products which it treated as covered by the Agreement, including making the required transfer fee payments, without ever listing them. (*See* SJ Mem. at 9, 19-22; SJ Reply at 5 n.12).[4]

Finally, and even if the Court does not reconsider its holding with respect to Enzo's claim under FAAC ¶ 54.1, Roche overreaches when, seizing on the Court's ruling, it proclaims Enzo abandoned *any* claims regarding Roche's sale, distribution, or use of unlisted products. Nor did the Court hold, as Roche now contends, "that Enzo may not pursue a contract claim against

---

[4] Roche denies that Elecsys and Taqman are subject to the Agreement, although they are new products covered by claims of Enzo's '523 and '830 patents, respectively. The reason is simple. These products are used almost exclusively for diagnostic and therapeutic purposes, in flagrant breach of the Agreement, which Roche admits "prohibits sales for 'diagnostic or therapeutic use.'" (SJ Mem. at 11).

5

unlisted Roche products such as Taqman and Elecsys." (Opp'n at 13). The Court rejected Roche's "one fundamental reason" for summary judgment and found it "cannot conclude that Roche's sales did not exceed the research-only restrictions in the Distribution Agreement." (Order at 7). Those sales consisted of both listed and unlisted PRODUCTS. Enzo thus retains its breach of contract claim for Roche's violation of the Agreement's use restrictions, which applies to all PRODUCTS, whether listed or unlisted. *See* FAAC at ¶ 54.3.

B.      **Enzo Pleaded Its Claim For Nonpayment After Expiration of Certain Patents**

One of the claims on which Roche did seek summary judgment is Enzo's breach of contract claim for Roche's failure to make payments for PRODUCTS sold after the expiration of relevant patents. Roche never asserted that no such claim was pleaded. Nevertheless, the Court found "Enzo never alleged this breach of contract in its pleadings" on the ground that "[i]n its list of counterclaims, the FAAC makes no mention of Roche's failure to comply with the payment provision of Section IV of the Agreement . . . . (*See generally* FAAC ¶¶ 47-59 (Enzo's claims for breach of contract).)" (Order at 9). Enzo's Opening Brief, however, recited the numerous FAAC allegations of Roche's breach of the Agreement by its failure to pay for products sold after the expiration of relevant patents. (*See* Op. Br. at 12-14). Rather than admit it understands this claim was pled, Roche mischaracterizes most of Enzo's allegations, while remaining tellingly silent on others that clearly demonstrate this claim was pled, primarily the following:

> Roche now asserts that it need not compensate Enzo for any products which are covered by Enzo patents after expiration. ***This position is contradicted by the explicit language of the Distribution Agreement, as well as the spirit and intent of the parties***. (FAAC ¶ 51, emphasis added).

Roche ignores this allegation and states that "any mention of nonpayment after expiration was included merely as factual background" and is only "in the facts section of the complaint . . . ." (Opp'n at 16). It is unclear how Roche can criticize Enzo for not providing "some link or

6

nexus between the background facts and the causes of action later identified in the complaint" and for "fail[ing] to make any mention whatsoever of this claim in its contract count," (*id.* at 17 & 18), when the above-quoted allegation of Enzo's claim was squarely stated in paragraph 51 of the FAAC.  The Order itself notes that paragraph 51 falls within Enzo's "contract count" and its "claims for breach of contract," which are stated in paragraph 47-59 of the FAAC.  (Order at 9).

Enzo sufficiently pleaded its breach of claim for nonpayment.  Nowhere in Roche's motion papers did it suggest that this claim was not pled (even though it did with respect to other claims).[5]  Roche cannot so easily escape the nonpayment claim (and the numerous other allegations in support of this claim).  Nor can Roche pretend that "[i]n order to plead the nonpayment claim, Enzo was required to have affirmatively stated it in its numbered list of counterclaims," by which it presumably means FAAC ¶ 54.  (Opp'n at 16).  Enzo's breach of contract counterclaim is not limited to paragraph 54.  It begins numerically at paragraph 47, which realleges paragraphs 1-46, and continues through paragraph 59.  The Court's Order did not ascribe (or even suggest) Roche's limitation, and Roche offers no support for such a cramped approach to notice pleading.[6]  Nor does Roche deny that it had ample notice of and responded to

---

[5] Curiously, Roche disputes this by quoting from the prior motion papers it filed in 2007.  (*See* Opp'n at 18 n.10).  Those papers evidence, if anything, an abandonment of any such argument.

[6] The authorities cited by Roche on this point are entirely inapposite, and Roche mischaracterizes most of them.  The court in *Lyman v. Pfizer, Inc.*, No. 09 Civ. 262, 2012 WL 2970627, *11 (D. Vt. July 20, 2012), did not find the addition of a "new paragraph in facts section" setting forth "violations of federal law" unsuccessfully attempted to state a cause of action.  Rather, it found the new allegation did not attempt to do so, and was offered simply as further "evidence of negligence."  *Id.*  In *Goodwine v. Conn. Dep't of Children and Families*, No. 08 Civ. 532, *13 n.8 (D. Conn. Jan. 14, 2011), the court noted in passing that a claim alleged to be brought by "plaintiffs" in the facts section of a complaint would be construed, consistent with how the claim was pleaded and briefed by the plaintiffs, to apply to only the plaintiff asserting that cause of action.  In *Jones v. Spitzer*, No. 01 Civ. 9754 (HB)(GWG), 2002 WL 737649, *3 (S.D.N.Y. Apr. 26, 2002), the court held a habeas petitioner failed to fairly present a challenge regarding his appellate counsel simply because all the allegations concerned his trial counsel.  Finally, *U.S.A.*

7

this nonpayment claim on the merits. Indeed, Roche itself seeks declaratory judgment on this issue. (FAC ¶ 64(e) & p. 28 (Dkt. No. 16)). That Roche may ultimately withdraw that claim is irrelevant to the undisputed fact that it had notice of the dispute. That fact, under controlling law that Roche did not address, militates against dismissal. *See Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004); *Simmons v. Abruzzo*, 49 F.3d 83, 87-88 (2d Cir. 1995).

Roche then re-argues the merits as to why it should, in any event, obtain summary judgment on this claim. Given the page limitation on this reply, Enzo incorporates by reference the arguments it made in its opposition on summary judgment. (*See* SJ Opp'n at 13-16). We reiterate only that the Agreement's language that its term "shall continue until the expiration of the last PATENT to expire," (Agr. at § XIV.A), without any language whatsoever as to the effect on contract payments when some but not all PATENTS in the contract group (*not* a license) expire, makes clear that Roche's interpretation is incorrect. *See, e.g., GAF Corp. v. Eastman Kodak Co.*, 519 F. Supp. 1203, 1236 (S.D.N.Y. 1981) ("The Supreme Court has expressly approved the payment of royalties on all patents in a license package until the expiration of the last patent in the package.") (citing *Brulotte v. Thys Co.*, 379 U.S. 29, 30, 33 (1964)).

**C.     Roche Disregards The Effect Of Section VII Of The Agreement Which Precludes Summary Judgment On The Manufacturing Claim**

Enzo demonstrated that the Court's resolution of Enzo's claim of unauthorized manufacture failed to consider essential contract language. Roche does not address the controlling law requiring interpretation of a contract as a whole or the language of Section VII.B.

In the Order, the Court focused on the language of Section II.A.1, and found it and the other provisions in the Agreement "say[ ] nothing about Roche satisfying *all* of its requirements

---

*Famous Original Ray's Licensing Corp. v. Tisi's Pizza and Pasta Inc.*, No. 09 Civ. 5517 (RMB)(AJP), 2009 WL 4351962, *4 n.4 (S.D.N.Y. Dec. 1, 2009), concerned a plaintiff's failure to properly assert a cause of action pursuant to a *statutory* treble damages provision.

8

for Group A Products by purchasing them from Enzo . . . ."  (Order at 8).

In so finding, the Court appears to have overlooked, *inter alia*, Section VII.B.  It states:

> If, after the Manufacturing Transition Period with respect to any Group A Products . . . [*i.e.*, October 25, 1994], Enzo becomes unable *to supply [Roche]'s supply needs* . . ., [Roche] may manufacture the affected Product(s) . . . for Enzo . . . until Enzo certifies to [Roche] that it has corrected the capacity or quality problems and *will be able to meet [Roche]'s requirements*.  (emphases added).

Roche mischaracterizes this provision.  This language did not "trigger[ ]" the Manufacturing Transition Period.  (Opp'n at 24).  The Manufacturing Transition Period is expressly defined to end by October 25, 1994.  That was a full stop after which Roche could no longer manufacture Group A PRODUCTS.  (Agr. at § VII.A).  Section VII.B provides a very limited exception to this prohibition that Roche has never contended applied.  Roche's only other response on Section VII.B is that it "does not affirmatively *require* Roche to purchase its needs or requirements from Enzo . . . ."  (Opp'n at 24).  But any such affirmative requirement would have been superfluous given the black letter law requiring one to source all of his requirements from another under a requirements contract.  *See*, *e.g.*, *Empire Gas Corp. v. Am. Bakeries Co.*, 840 F.2d 1333, 1339 (7th Cir. 1988) (Posner, J.) ("Clearly, American Bakeries was acting in bad faith if during the contract period it bought propane conversion units from anyone other than Empire Gas, or made its own units . . . ."); *Honeywell Int'l Inc. v. Air Prods. & Chems., Inc.*, 858 A.2d 392, 396 (Del. Ch. 2004) (Strine, C.) (holding defendant breached its obligation "to buy all of its requirements for sales" from plaintiff by, among other things, acquiring a company to manufacture for itself), *aff'd in part, rev'd in part on other grounds*, 872 A.2d 944 (Del. 2005).

Roche's insistence on a superfluous provision is not a basis for summary judgment.  *Accord Miller v. Universal Pictures Co.*, 10 N.Y.2d 972, 981 (1961) (rejecting requirement of "express negative covenant" prohibiting particular uses because "[i]t was unnecessary to express

such a prohibition" given the intention shown in the contract and evidence to limit use).[7]

Knowing this, Roche also argues that Section VII.B does not evidence a requirements obligation because it does not "use[ ] the traditional requirements-contract phrasing," contrasting it with Section III.A. (Opp'n at 24).[8] Roche, however, never bothers to explain how the language in Section VII.B materially differs from that in Section III.A. Nor is there a single, inviolate form of phrasing. At the least, there is an ambiguity as to a requirements obligation that precludes summary judgment. *Cf., e.g., GRM Corp. v. Miniature Precision Components, Inc.*, No. 06-15231-BC, 2008 WL 82224, *6 (E.D. Mich. Jan. 8, 2008) (denying summary judgment where language referring to "requirements" "alone suffices to indicate the existence of requirements contracts").[9]

---

[7] The well-understood negative covenant inherent in a requirements contract to not source one's requirements outside the contract distinguishes this case from *Bristol-Myers Squibb Co. v. Matrix Labs. Ltd.*, 12 CIV. 5846 PAE, 2013 WL 4056219 (S.D.N.Y. Aug. 12, 2013). The agreement in *Bristol-Myers* permitted the defendant, for an immunity from infringement, to make and sell products only within a defined territory. *Id.* at *8. There was no inherent condition embedded within that arrangement as a matter of law that would prohibit or hold defendant accountable for later sales of the products by the defendant's in-territory purchasers outside the defined territory, and thus there could be no breach by defendant. Nor did Roche have extant rights or obligations for which self-manufacture of Group A PRODUCTS was "integral" and thus necessarily contemplated by the parties, as was the case in *XO Communications, LLC v. Level 3 Communications, Inc.*, 948 A.2d 1111, 1121 (Del. Ch. 2007).

[8] Roche misleadingly states Section III.A of the Agreement applies to Enzo's requirements for "Group A . . . Products." (*Id.*). That is false. It applies to Group A´ Products.

[9] Finally, Roche reasserts its worn out line of attack when it challenges Enzo's invocation of the implied covenant of good faith and fair dealing as a brand new claim. (*See* Opp'n at 21-22). Roche disregards this Court's prior ruling that the covenant is implied in every contract and a breach of the covenant is a breach of contract. (Dkt. No. 119 at 6). This proposition is particularly well-recognized in the context of requirements contracts. *See, e.g., Elevator Motors Corp. v Leistritz AG*, No. CV-88-0005(CBA), 1992 WL 91904, *8 n.7 (E.D.N.Y. Apr. 20, 1992) ("It is, however, well settled that a requirements contract need not contain a quantity term and that an obligation of good faith and best efforts will be implied.").

## **CONCLUSION**

For the foregoing reasons, Enzo respectfully requests that the Court reconsider and vacate its prior rulings in its Memorandum and Order, dated December 6, 2013, granting Roche summary judgment on Enzo's counterclaims for breach of contract regarding unlisted PRODUCTS, Roche's nonpayment for PRODUCTS sold after the expiration of patents, and Roche's manufacture of 10-11 grams of Bio-Nucleotides; and grant to Enzo such other relief the Court may deem appropriate.

Dated:   January 24, 2014
      __/s/ Ronald D. Lefton_____
      Michael Burrows
      Jeffrey R. Mann
      Ronald D. Lefton
      Richard C. Pettus
      GREENBERG TAURIG, LLP
      200 Park Avenue
      New York, NY 10166
      (212) 801-9200

*Attorneys for Defendants and Counterclaim Plaintiffs Enzo Biochem, Inc. and Enzo Life Sciences, Inc.*