January 30, 2015

**BY E-MAIL (sullivannysdchambers@nysd.uscourts.gov)**

Honorable Richard J. Sullivan, U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square, Room 905
New York, NY  10007

Re:  *Roche Diagnostics GmbH v. Enzo Biochem, Inc., et al.*, 04 Civ. 4046 (RJS) (S.D.N.Y.)

Dear Judge Sullivan:

  Pursuant to Section 2.G of the Court's Individual Practices, the parties jointly submit this letter concerning Enzo's motion to compel Roche to produce discovery relevant to Enzo's "research use only" breach of contract claim.  Enzo's counsel Christine Willgoos and Roche's counsel Omar Khan met and conferred on December 30, 2014 and again on January 6, 2015 (also including Enzo's counsel Geoffrey Hu), but were unable to resolve this issue.

  **A.** **Enzo's Position**

  This motion arises from the parties' disagreement as to the scope of footnote 4 of the Court's December 6, 2013 Order (the "Order").  (D.I. 132)  That footnote cites paragraph 54 of Enzo's February 25, 2005 First Amended Answer and Counterclaims ("FAAC"; D.I. 18), and states:  "Enzo has abandoned two *other* breaches that it alleged in the FAAC:  (1) that Roche sold, distributed, and/or developed Products that were not explicitly listed in the Agreement but that were somehow covered by the Agreement, and (2) that Roche purchased Products from suppliers other than Enzo."  (Emphasis added)  Enzo believes this holding applies to its first and fourth claims in paragraph 54, whose language the sentence tracks, but not to its third claim in that paragraph, which alleges that Roche breached the Agreement by selling and distributing Products for unauthorized purposes in violation of its "research use only" clause:

> 1.  Selling, distributing and/or developing without Enzo's authorization PRODUCTS that are not listed [in] the Distribution Agreement . . .;
> 2.  Manufacturing without Enzo's authorization PRODUCTS or new products based on PRODUCTS . . .;
> 3.  Selling, using and/or distributing PRODUCTS for unauthorized purposes (such as diagnostic or therapeutic use, or commercial development and exploitation) . . .; and
> 4.  Purchasing PRODUCTS . . . from suppliers others than Enzo. . .

(FAAC ¶ 54(1)-(4))  The Order allowed the "research use only" claim to proceed to trial.

  Enzo contends in its "research use only" claim that Roche breached the Agreement's use restrictions (Sections II and XV) by selling and/or distributing, for uses other than research use only, Products whose "manufacture, use or sale . . . is covered by claims of a PATENT" (Section 1).  *See* D.I. 93 (filed under seal), Gunther Decl. Ex. 2 at §§ II, XV.  As this Court found, "all of the Products were limited to 'research use only…'" (D.I. 132 at 2)  The Agreement expressly identifies relevant PATENTS, including one of the patents-in-suit, U.S. Patent No. 4,943,523 ("the '523 Patent"), which covers Roche's Elecsys Products.  Enzo has consistently alleged that Roche sold Elecsys Products in breach of the "research use only" provision.[1]  Enzo believes Roche had approximately **$7-9 billion** of worldwide sales of Elecsys

---

[1] For example, Enzo alleged in its FAAC that Roche breached the Agreement by selling diagnostic products using

Honorable Judge Richard J. Sullivan
January 30, 2015
Page 2

products in the relevant time frame. Enzo's damages are a substantial portion of Roche's sales.

Accordingly, Enzo asks the Court to compel Roche to produce contract damages discovery concerning Roche's Elecsys Products. Roche has refused to provide this discovery based on arguments that (a) Enzo's "research use only" claim purportedly does not apply to Roche's Elecsys Products because they are not listed in the Agreement, and (b) the above-quoted sentence in footnote 4 of the Order supposedly applies not only to two particular claims but also to a "theory." That argument is incorrect.

The Order plainly found that Enzo "abandoned" its breach of contract claims in FAAC ¶ 54(1) and (4), *not* its separate claim in ¶ 54(3) for breach of the "research use only" restriction and *not* some "theory". Footnote 4 comes at the end of the sentence in the Order that expressly states that "Enzo asserts three *distinct* breaches of the Distribution Agreement," separate and apart from the "two *other* breaches" found to be "abandoned." The Order explains that the first of those "*distinct*" asserted breaches is Enzo's claim "that Roche violated the Agreement's research-only use restrictions." (D.I. 132 at 5, emphasis added) The Order did *not* limit the Products as to which Enzo could seek relief in its research use claim, whether listed in the Agreement or not, including the ECL Products Enzo mentioned in its FAAC and never abandoned. The Order also did *not* limit the evidence Enzo may present as proof of its research use claim, including that Roche's Elecsys Products are "covered by" the Agreement.

Indeed, there was no occasion for the Order to address Roche's Elecsys Products because *Roche specifically excluded them* from the scope of its motion. For example, Roche stated in its reply brief – following a sentence that refers to Enzo's patent *and contract claims* (not just its patent claims as Roche now argues): "Enzo's brief refers to a number of Roche products – [including] Elecsys – that are *not the subject of this motion* because they are accused of infringing the '830 and '523 patents, as to which the Court has set a separate schedule." (D.I. 111 Reply Br. at n. 1 (emphasis added))[2] Furthermore, *there is no question that the Agreement applies to unlisted Products covered by the PATENTS.* Roche itself conceded in its reply brief (*id.* at 5 n. 12) and an accompanying Roche letter, and concedes again below, that the Agreement covers, and Roche paid Enzo for, numerous unlisted Products. Roche's letter states (a) "[t]he various types of 'Products' in the 1994 Agreement are all defined by reference to whether the manufacture, use or sale of such product is covered by an Enzo patent" (D.I. 112 at Ex. 41 at 1), and (b) between 1994 and 2004 Roche paid Enzo under the Agreement for "almost 80 such [unlisted] products." (*Id.* at 2-3) Nevertheless, although Roche's Elecsys Products are "covered by" Enzo's '523 patent, Roche asks the Court summarily to decide on this motion, based only on

---

ECL technology, including Elecsys Products: "on or about July 24, 2003, Roche [] acquired Igen International Inc., thereby securing rights to the *electrochemiluminescence (ECL) technology* which is now used to support Roche's *diagnostic (not research)* product lines." (FAAC ¶¶ 4, 6 (emphasis added)) Enzo alleged, with respect to Elecsys, "Roche has blatantly and repeatedly *breached the Distribution Agreement*, . . . [by] among other things, *engaging in commercial development and exploitation* of Enzo's patented products and technology, separately and in concert with others, including…Igen…", and "Roche has also engaged in *commercial development and exploitation* of Enzo's patented products and technology with others, including…Igen…." (*Id.* ¶ 4, 40 (emphasis added))

[2] This quote also shows that Roche's argument that Enzo abandoned or did not address Elecsys in its response with respect to Enzo's "research use only" claim is disingenuous. Moreover, the case law Roche cites in footnote 4 is inapposite. It concerns a party abandoning a claim by not setting forth a defense to specific allegations raised on summary judgment. In contrast, Roche explicitly *excluded* Elecsys products from the scope of its motion, and Enzo presented sufficient evidence on its research use contract claim to survive summary judgment.

KL3 3002224.7

Honorable Judge Richard J. Sullivan
January 30, 2015
Page 3

Roche's assertion, that there was purportedly "no intention" that those Products were also covered by the Agreement. That is a question for the jury.

It is settled that a party may seek the same relief in alternative claims as Enzo did in its claims that Roche breached the Agreement (a) by selling products not listed there (FAAC ¶ 54(1)), and (b) by violating its "research use" restriction with respect to *all* Products, whether listed in the Agreement or not. (FAAC ¶ 54(3))[3] The Court granted summary judgment on the first claim on grounds of "abandonment," *not on the merits*, and *did not rule* on what Roche labels the "threshold matter" of whether Elecsys Products are "covered by" the Agreement.

Roche's argument that the Court's denial of Enzo's motion for reconsideration of certain aspects of the Order somehow limits Enzo's FAAC ¶ 54(3) use restriction claim is disingenuous. ***Enzo did not move for reconsideration with respect to that claim.*** Enzo argued that the dismissal of its FAAC ¶ 54(1) claim should be reconsidered because it was not abandoned, and cited evidence concerning Roche's sale of unlisted products, both in general and in contravention of the use restrictions. Roche takes those statements out of context in an attempt to limit Enzo's FAAC ¶ 54(3) claim. Nothing in the Court's denial of the reconsideration motion removed the Elecsys Products from the scope of Enzo's "research use only" claim.

Roche's attempt to narrow Enzo's research use claim is plainly not warranted. ***The Court*** explained that footnote 4 of the Order concerned "***two other breaches***" and not Enzo's "***distinct***" research use claim. That claim survived summary judgment without limitation. Nor would excluding Elecsys from that claim significantly narrow the scope of trial, as Roche argues, even if that were relevant to this motion (and it is not). The Elecsys Products will also be at issue at trial as accused products on Enzo's patent infringement claims. Moreover, Enzo served its discovery requests at issue on ***October 31, 2014*** and seeks ***contract*** damages discovery it could not obtain in the prior discovery period concerning its '523 patent. Roche's request for costs is baseless.

B.  **Roche's Position**

This is the third time that the Court is being called upon to decide this issue. In its ruling on Roche's motion for summary judgment, the Court explicitly held that Enzo had "abandoned" any breach of contract theory relating to "Products that were not explicitly listed in the Agreement but that were somehow covered by the Agreement." Dkt. No. 132 at 5 n.4. The Court also denied Enzo's motion for reconsideration of the ruling on Enzo's unlisted-products theory. Dkt. No. 217 at 1. In a misguided effort to resuscitate its contract claims relating to the Elecsys products—a product line "not explicitly listed in the Agreement"—Enzo mischaracterizes the Court's two previous rulings and the parties' briefing in connection with those rulings. Notwithstanding the Court's significant efforts to narrow the issues for trial, Enzo persists in yet another effort to substantially expand the scope of this case to include unlisted products that the Court ruled were abandoned and that were ***never*** mentioned—not once—in Enzo's papers in opposition to Roche's motion for summary judgment of Enzo's contract claims. Enzo's "belief" that it can continue to pursue the Elecsys products on a breach of contract theory is unreasonable and meritless for at least three reasons.

---

[3] *See, e.g., Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. 1999) ("Rule 8(e)(2) offers sufficient latitude to construe separate allegations in a complaint as alternative theories, at least when drawing all inferences in favor of the nonmoving party as we must do in reviewing orders granting motions to dismiss or for summary judgment.").

Honorable Judge Richard J. Sullivan
January 30, 2015
Page 4

    ***First***, Enzo argues that the unlisted-products theory that the Court deemed abandoned was "distinct" from the research-use theory as to which the Court denied summary judgment. That argument is baseless. By "distinct," Enzo means not only that those theories were pled separately in the complaint, but also that the dismissal of the former had no effect on the latter. That, of course, cannot be true given that the unlisted-products theory was directed to the threshold issue of which products were covered by the Agreement in the first place. The plain and express language of the Court's decision holds that Enzo abandoned ***any*** breach predicated on the fact "that Roche sold, distributed, and/or developed Products that were not explicitly listed in the Agreement but that were somehow covered by the Agreement." In order to assert a research-use claim against the Elecsys products, Enzo would ***necessarily*** have to show (and the jury would necessarily have to find) that those products "were not explicitly listed in the Agreement but [] were somehow covered by the Agreement" because, as a threshold matter, a product must be "covered by" the Agreement in order to be subject to its research-use restrictions. Thus, Enzo's contention that unlisted products somehow remain subject to its "research-use" theory should be rejected once again.

    Indeed, Enzo itself has interpreted the Court's decision to preclude ***any*** claim with respect to unlisted products. In its motion for reconsideration, Enzo summarized the Court's ruling as follows: "This Court's ruling, expressed in footnote 4 of its Order, [is] that Enzo abandoned its breach of contract ***claims*** with respect to unlisted PRODUCTS . . . ." Dkt. No. 135 at 6-8 (using plural form of "claim"); *see also id.* at 7-8 (unsuccessfully arguing that Enzo had, contrary to the Court's ruling, "addressed the issue of whether unlisted products can become PRODUCTS covered by the subject Agreement in its Opposition"). Enzo argued in its motion for reconsideration ***exactly*** what it is arguing now: that the Court had overlooked the fact that "PRODUCTS (listed or unlisted) for unauthorized non-research uses in violation of the contractual restrictions were breaches of the Agreement." Dkt. No. 135 at 2-3, 8; *id.* at 3, 8-9 (identifying Elecsys products as one type of "unlisted" product). The Court rejected these arguments. Dkt. No. 217 at 1. Thus, the Court has twice resolved the threshold issue of which products are "covered by" the Agreement and twice concluded that Enzo abandoned any claim to "Products that were not explicitly listed in the Agreement."

    ***Second***, as Roche noted in opposing Enzo's motion for reconsideration, the Court correctly found that Enzo abandoned its claims with respect to "Products that were not explicitly listed in the Agreement but that were somehow covered by the Agreement." *See* Dkt. No. 146 at 5-14. In making its initial finding and then denying Enzo's motion for reconsideration, the Court reviewed Enzo's opposition brief and found that unlisted products were not addressed. *See* Dkt. No. 132 at 5 n.4 (comparing "FAAC ¶ 54 *with* Opp. at 1-2," summarizing Enzo's opposition brief). In opposing summary judgment, Enzo did not make ***any*** of the arguments that it is now making in this letter with respect to the Elecsys products. Indeed, there is ***not a single reference*** to the Elecsys products in Enzo's briefing on the breach of contract claims—not in Enzo's opposition brief, not in its Rule 56.1 statement, and not in its exhibits and declarations provided in support of its opposition papers.[4] The fact that Enzo did not identify or address the Elecsys

---

[4] *See, e.g.*, *Jackson v. Fed. Exp.*, 766 F.3d 189, 194-98 (2d Cir. 2014) ("partial response arguing that summary judgment should be denied as to some claims while not mentioning others" constitutes "abandonment"); *Point 4 Data Corp.*, No. 11-cv-726, Dkt. No. 352 (E.D.N.Y. Sept. 17, 2014) (waiver/abandonment of certain categories of damages by not addressing them in opposing summary judgment); *Weiss v. La Suisse*, 293 F. Supp. 2d 397, 408

products (and/or unlisted products generally) in its opposition papers demonstrates that Enzo abandoned its claims with respect to those products. Enzo's current assertion that it somehow preserved a breach of contract claim with respect to Elecsys products is meritless.

***Third***, in denying Enzo's motion for reconsideration, the Court has already rejected all of Enzo's arguments above relating to the scope of the summary judgment briefing and the issues that Roche and Enzo did (or did not) raise. For example, Enzo contends that Roche's summary judgment motion did not address unlisted products and that it "carved out" the Elecsys products. These exact arguments were made by Enzo in its denied motion for reconsideration. *See* Dkt. No. 135 at 6-8. To the contrary, Roche's briefs unequivocally (i) sought dismissal of the full scope of each of Enzo's breach of contract theories in Paragraph 54 of Enzo's Amended Answer and Counterclaims, *see* 12/21/2012 Roche Op. Br. at 4-5; and also (ii) explained why "products not listed in an exhibit are not PRODUCTS under the Agreement and thus are not subject to ***any*** of the Agreement's requirements," including the research-use requirement, *see id*. at 7-9. As Roche explained in opposing Enzo's motion for reconsideration, Enzo quotes out of context certain statements made while addressing Enzo's patent infringement claims, not the contract claims as to which Roche unequivocally sought relief with respect to all unlisted products. Dkt. No. 146 at 10. Roche also addressed the argument made in Enzo's motion for reconsideration, Dkt. No. 135 at 7, that all unlisted products must have been subject to the Agreement because Roche paid for certain "unlisted" products. Although there were certain products that the parties deemed listed under the Agreement, that does not mean that any and all unlisted products as to which there was no such intention were also "covered by" the Agreement. Dkt. No. 146 at 12.

Finally, allowing Enzo to proceed against the Elecsys products on a breach of contract theory would significantly change the scope and posture of this case. As a threshold matter, the jury cannot be allowed to hear evidence that the Elecsys products "were not explicitly listed in the Agreement but [] were somehow covered by the Agreement" since this would be directly contrary to the Court's ruling that Enzo abandoned such a theory. Moreover, patent infringement and breach of contract claims are separate causes of action with different elements and associated theories of damages, which will likely necessitate different types of proof. And, of course, Enzo should not be allowed to engage in a second round of damages discovery on the Elecsys products when it has already conducted extensive damages discovery during the fact discovery period relating to its patent infringement claims against the Elecsys products, Dkt. No. 123.

Over the decade-long history of this case, Enzo has attempted to assert and re-assert over a dozen abandoned or unpled theories of relief in this and the related litigations pending before the Court. *See* Dkt. No. 146 at 1 n.1 (summarizing the Court's admonitions and rulings in this regard). Although Roche has never previously sought sanctions in connection with Enzo's many attempts to relitigate issues that the Court had previously resolved, enough is enough. Roche asks the Court to not only deny Enzo's motion but also award Roche's fees and costs in connection with having to litigate these issues for yet a third time. *See, e.g.*, Fed. R. Civ. P. 16(f)(1)(C); Fed. R. Civ. P. 37(a)(5)(B); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 49 (1991).[5]

---

(S.D.N.Y. 2003) (limiting trial to disputed issues of fact raised in opposition to summary judgment).

[5] *See In re NASDAQ*, 187 F.R.D. 124, 130-31 (S.D.N.Y. 1999) ("continued assertion of a factual or legal argument long after that argument has proven to be completely baseless is sanctionable"); *Green v. Kadilac*, 936 F. Supp. 108, 118 (S.D.N.Y. 1996) (same); *Siderpali v. Judal Indus.,* 833 F. Supp. 1023, 1029 (S.D.N.Y. 1993) (same).

Respectfully submitted,

| KRAMER LEVIN NAFTALIS & FRANKEL LLP | WILMERHALE LLP |
|---|---|
| By: */s/ Michael J. Dell* | By: */s/ Robert J. Gunther, Jr.* |
| Michael J. Dell | Robert J. Gunther, Jr. |
| 1177 Avenue of the Americas | 7 World Trade Center |
| New York, NY 10036 | 250 Greenwich Street |
| 212-715-9100 | New York, NY 10007 |
| *mdell@kramerlevin.com* | 212-230-8830 |
| | *robert.gunther@wilmerhale.com* |
| *Attorneys for Enzo Biochem, Inc.* | *Attorneys for Roche Diagnostics GmbH* |
| *and Enzo Life Sciences, Inc.* | *and Roche Molecular Systems, Inc.* |

KL3 3002224.7