UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ENZO BIOCHEM, INC., *et al.*,

                    Plaintiffs,

-v-

MOLECULAR PROBES, INC.,

                    Defendant.

No. 03-cv-3816 (RJS)
ORDER

---

ENZO BIOCHEM, INC., *et al.*,

                    Plaintiffs,

-v-

PERKINELMER, INC., *et al.*,

                    Defendants.

No. 03-cv-3817 (RJS)
ORDER

---

ROCHE DIAGONOSTICS GMBH, *et al.*,

                    Plaintiffs,

-v-

ENZO BIOCHEM, INC., *et al.*,

                    Defendants.

No. 04-cv-4046 (RJS)
ORDER

---

RICHARD J. SULLIVAN, District Judge:

    On February 27, 2015, the Court presided over a meet and confer session in connection with the charging lien dispute between Enzo Biochem, Inc. and Enzo Life Sciences, Inc. ("Enzo") and Greenberg Traurig LLP ("GT"). As discussed at the meet and confer session, all

of the parties' proposed redactions to the Court's December 30, 2014 Sealed Opinion and Order are not necessary to address the prejudice concerns identified in the Court's March 18, 2014 Order (Doc. No. 159, *Roche Diagnostics GmbH, et al. v. Enzo Biochem, Inc., et al.*, No. 04-cv-4046 (RJS)). Accordingly, IT IS HEREBY ORDERED THAT the redacted version of the Court's December 30, 2014 Sealed Opinion and Order attached to this Order is now added to the public dockets of the above-captioned actions. IT IS FURTHER ORDERED THAT the parties shall, by March 6, 2015, docket the redacted versions of the memoranda and declarations submitted in connection with the underlying motion, as emailed to the Court on January 12, 2015. As the Enzo matters progress and are resolved, the Court will direct the parties to address whether the various documents should remain redacted and will likely unseal most or all of the record related to the charging lien dispute.

SO ORDERED.

DATED: March 2, 2015
New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENZO BIOCHEM, INC., *et al.*,<br><br>                            Plaintiffs,<br><br>-v-<br><br>MOLECULAR PROBES, INC.,<br><br>                            Defendant. | No. 03-cv-3816 (RJS)<br>SEALED<br>OPINION AND ORDER |
| ENZO BIOCHEM, INC., *et al.*,<br><br>                            Plaintiffs,<br><br>-v-<br><br>PERKINELMER, INC., *et al.*,<br><br>                            Defendants. | No. 03-cv-3817 (RJS)<br>SEALED<br>OPINION AND ORDER |
| ROCHE DIAGONOSTICS GMBH, *et al.*,<br><br>                            Plaintiffs,<br><br>-v-<br><br>ENZO BIOCHEM, INC., *et al.*,<br><br>                            Defendants. | No. 04-cv-4046 (RJS)<br>SEALED<br>OPINION AND ORDER |

RICHARD J. SULLIVAN, District Judge:

    Now before the Court is Greenberg Traurig's motion to set the value of its charging lien. For the reasons set forth below, the Court preliminarily determines the value to be ███ ███ and directs the parties to submit limited supplemental briefing.

I. BACKGROUND

On March 17, 2014, Greenberg Traurig ("GT") moved to withdraw as counsel of record for Enzo Biochem, Inc. and Enzo Life Sciences, Inc. (collectively, "Enzo") in each of the five related matters then pending before the Court (collectively, "the Enzo matters").[1] (Doc. Nos. 223, 229–230.)[2] GT also sought to confirm its charging lien, pursuant to New York Judiciary Law § 475 ("Section 475"), against any future recovery in the Enzo matters. (*See id.*) After voluminous briefing and a hearing, the Court, in a Memorandum and Order dated May 9, 2014, granted GT's motions to withdraw and confirmed GT's statutory entitlement to a charging lien, but reserved decision regarding the amount of any charging lien. (Doc. No. 252.)

Thereafter, on June 25, 2014, GT filed a motion to determine the value of its charging lien, which included (1) a memorandum of law in support of the motion, (2) a declaration in support of the motion from GT attorney Michael Burrows, and (3) a declaration in support of the motion from Jeffrey R. Mann, also a GT attorney. In a letter dated July 9, 2014, Enzo sought discovery in advance of filing its opposition to GT's motion. By Order dated July 11, 2014, the Court denied that request and instead directed Enzo to specify any discovery requests and their relevance within the context of their opposition brief. (*Enzo Biochem, Inc., et al. v. Molecular Probes, Inc.*, No. 03-cv-3816 (RJS) ("*MPI*"), Doc. No. 197; *Roche Diagnostics GmbH, et al. v. Enzo Biochem, Inc., et al.*, No. 04-cv-4046 (RJS) ("*Roche*"), Doc. No. 214.) Enzo's opposition, dated July 16, 2014,

---

[1] In addition to the above-captioned matters, GT also moved to withdraw in two additional related matters, *Affymetrix, Inc. v. Enzo Biochem, Inc., et al.*, No. 03-cv-8907 (RJS) and *Enzo Life Sciences, Inc. v. Affymetrix, Inc.*, No. 04-cv-1555 (RJS) (together, *Affymetrix*). *Affymetrix* and *Enzo Biochem, Inc., et al. v. PerkinElmer, Inc., et al.*, No. 03-cv-3817 (RJS) ("*PerkinElmer*") have since settled.

[2] The papers filed in connection with GT's motions were simultaneously filed in all of the Enzo matters. For clarity, the Court cites only the docket entries in *PerkinElmer*, unless otherwise indicated. Many of these entries contain only a redacted version of the referenced document. The unredacted versions are currently under seal for the reasons articulated in the Court's March 18, 2014 Order. (Doc. No. 224.) For these same reasons, the charging lien briefs and letters have also been filed under seal, with no publicly docketed redacted versions available at this time. As the Enzo matters progress and are resolved, the Court will direct the parties to address whether the various documents should remain under seal and will likely unseal most or all of the record related to GT's motions.

included (1) a memorandum of law in opposition to the motion ("Enzo Br."), (2) an affidavit from Michael J. Brychel, and (3) an affidavit from Barry W. Weiner. On July 28, 2014, GT filed its reply in further support of its motion, which included (1) a memorandum of law, (2) a second declaration from Michael Burrows, (3) a second declaration from Jeffrey R. Mann, and (4) a declaration from David M. Brodsky. At that point, GT's motion was fully briefed. In a letter dated August 4, 2014, Enzo renewed its request for discovery and an evidentiary hearing, and sought to strike portions of GT's Reply. On October 2, 2014, following this Court's denial of Enzo's motion for reconsideration (*Roche*, Doc. No. 217), Enzo submitted an additional letter urging the Court to value GT's charging lien at $0 and apprising the Court of Enzo's intent to file malpractice claims against GT.[3]

## II. DISCUSSION

In New York, there are at least two forms of recourse against non-payment for "an attorney who ceases to represent his or her client but has rendered services for which payment has not yet been received." *Melnick v. Press*, No. 06-cv-6686 (JFB) (ARL), 2009 WL 2824586, at *2 n.1 (E.D.N.Y. Aug. 28, 2009) (quoting *McDermott v. Great Am. Alliance Ins. Co.*, No. 5:02 Civ. 0607 (NAM/DEP), 2006 WL 2038452, at *2 (N.D.N.Y. July 18, 2006)). The first form of recourse, a retaining lien, is derived from the common law, and the second, a charging lien, is created by statute. *Id.*

---

[3] Enzo seeks – in advance of the Court's ruling on GT's motion – document production from GT, depositions, and an evidentiary hearing with live testimony. While Enzo's discovery requests appear to be relevant to Enzo's oft-threatened future malpractice suit, such discovery is not necessary to determine the value of GT's charging lien. Naturally, this Court's decisions regarding discovery and the value of GT's charging lien are distinct from and do not preclude Enzo's contemplated state law malpractice action.

"New York Judiciary Law § 475 ("Section 475") governs attorneys' charging liens in federal courts sitting in New York." *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998). Section 475 provides, in part:

> From the commencement of an action, . . . the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

N.Y. Judiciary Law § 475. An attorney's charging lien "upon his client's recovery is a vested property right created by law and not a priority of payment." *See In re Washington Square Slum Clearance*, 157 N.E.2d 587, 589 (N.Y. 1959). Where an attorney "possesses a charging lien under Section 475 by operation of law, the district court's task [is] simply to fix the amount of the lien . . . ." *Itar-Tass Russian News Agency*, 140 F.3d at 453. As set forth in the Court's May 9, 2014 Order, GT is entitled to a charging lien because its withdrawal as counsel of record was for good cause. (Doc. No. 252.)

"A charging lien, although originating at common law, is equitable in nature, and the overriding criterion for determining the amount of a charging lien is that it be fair." *Sutton v. New York City Transit Auth.*, 462 F.3d 157, 161 (2d Cir. 2006) (internal citations and quotation marks omitted). The Second Circuit has made clear that "[i]f the amount of the charging lien has been fixed by agreement . . . execution is appropriate on the judgment for the amount agreed to by the parties." *Itar-Tass Russian News Agency*, 140 F.3d at 453 (citing *Machcinski v. Lehigh Valley R. Co.*, 272 F. 920, 922 (2d Cir. 1921)).

It is also clear that, in the absence of such an agreement between counsel and client, a court should determine the amount of the charging lien on a *quantum meruit* basis. *See, e.g., Stair v. Calhoun*, 722 F. Supp. 2d 258, 268 (E.D.N.Y. 2010) ("[I]t is also well settled in New York that

4

absent an express agreement between the attorney and client to the contrary, a discharged attorney may recover the fair and reasonable value of the services rendered, determined at the time of the discharge and computed on the basis of *quantum meruit*."); *Purchase Partners, LLC v. Carver Fed. Sav. Bank*, No. 09-cv-9687 (JMF), 2014 WL 462823, at *3 (S.D.N.Y. Feb. 5, 2014) ("Under New York law, a charging lien may be determined on a *quantum meruit* basis, ascertaining the reasonable value of the legal services rendered up to the date of counsel's withdrawal or discharge." (citations and internal quotation marks omitted)). In assessing the amount of a charging lien on a *quantum meruit* basis, a court must consider at least the following seven factors: "(1) 'the difficulty of the matter'; (2) 'the nature and extent of the services rendered'; (3) 'the time reasonably expended on those services'; (4) 'the quality of performance by counsel'; (5) 'the qualifications of counsel'; (6) 'the amount at issue'; and (7) 'the results obtained (to the extent known).'" *Antonmarchi v. Consol. Edison Co. of New York*, 678 F. Supp. 2d 235, 242 (S.D.N.Y. 2010) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 148 (2d Cir. 1998)). "[T]he determination of the reasonable value of the attorney's services is a matter within the sound discretion of the trial court." *Sequa Corp.*, 156 F.3d at 149 (citation and internal quotation marks omitted).[4]

---

[4] At least one court in this District has interpreted this legal framework to mean that even if the value of the charging lien is set by the parties' agreement, the agreement itself must be fair. *See Figueroa v. City of New York*, No. 05-cv-9594 (JGK), 2011 WL 3423390, at *4 (S.D.N.Y. Aug. 4, 2011) ("Where the amount of a charging lien has been fixed by agreement, execution is appropriate on the judgment for the amount agreed to by the parties, *Itar-Tass*, 140 F.3d at 453, subject to the limitation that, because a charging lien is an equitable remedy, the amount of the lien must be 'fair,' *Sutton v. N.Y. City Transit Auth.*, 462 F.3d 157, 161 (2d Cir. 2006)."). This proposition of law purports to rely on *Sutton v. New York City Transit Authority*. However, in *Sutton*, the Second Circuit noted that it approved of the lower court's *quantum meruit* analysis because the law firm's representation ended "*in the absence of provision in the retainer agreement for counsel withdrawing for cause*." *Sutton*, 462 F.3d at 160–61 (emphasis added) (internal citation and quotation marks omitted); *see also Melnick v. Press*, No. 06-cv-6686 (JFB) (ARL), 2009 WL 2824586, at *4 (E.D.N.Y. Aug. 28, 2009) ("As for the amount at which the charging lien should be fixed, it is also well settled in New York that *absent an express agreement between the attorney and client to the contrary*, a discharged attorney may recover the fair and reasonable value of the services rendered, determined at the time of the discharge and computed on the basis of *quantum meruit*." (emphasis added)). Accordingly, it is by no means clear that a *quantum meruit* analysis is necessary or appropriate where, as here, the attorney and client entered into an express agreement in the event of a withdrawal.

Here, the May 26, 2004 retainer agreement between Enzo and GT provided, in general terms, that Enzo would pay GT, within thirty days after receiving an invoice, at ▮▮▮ of GT's normal billing rate and reimburse GT in full for all disbursements. (*See* Declaration of Michael Burrows ("Burrows Decl."), dated June 25, 2014, Ex. 1 ("Engagement Letter").) If any of the cases covered by the agreement was successful, then GT would be entitled to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*See id.*) The Engagement Letter also explicitly stated that the parties "have not negotiated any fee cap that would apply to this case and that there is no fee cap that applies in this matter." (*Id.* at 2.) Notably, the Engagement Letter dictated a particular course of action if GT withdrew from representation:

> Enzo understands and agrees that GT may withdraw as counsel for Enzo for good cause. "Good Cause" shall include without limitation, the failure of Enzo to cooperate with its attorneys or comply with this Agreement, or their request that GT or its attorneys act in a manner that would violate the Rules of Professional Conduct. Such withdrawal shall not affect Enzo's obligations to reimburse GT for costs previously incurred. Enzo may terminate this Agreement for good cause with thirty days written notice to GT. Upon termination or withdrawal, GT, at its sole option, will be paid the greater of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ of the Recovery, less any Recovery amounts previously received by GT in connection with this case, or ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, to be paid within fifteen (15) days.

(*Id.* at 2 (emphasis removed).) The Engagement Letter further set forth a range of the then-current billing rates of GT's attorneys and paralegals. (*See id.* at 2–3.) The Engagement Letter was "agreed to and accepted" on June 8, 2004. (*See id.* at 3.)

From May 26, 2004 through April 30, 2014, GT billed to Enzo $▮▮▮▮▮▮ in fees (at the agreed upon reduced rate) and ▮▮▮▮▮▮ (at 100%) in disbursements, for a total of ▮▮▮▮▮▮. (*See* Burrows Decl., Ex 2.) Given the Second Circuit's instruction that where "the amount of the charging lien has been fixed by agreement . . . execution is appropriate on the judgment for the

6

amount agreed to by the parties." *Itar-Tass*, 140 F.3d at 453, the Engagement Letter ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[5]

Of course, the Court acknowledges that while GT billed Enzo for ▮▮▮▮▮▮▮▮ in fees and disbursements, Enzo has only *paid* a portion of that sum. (*See* Burrows Decl., Ex 2.) GT asserts that Enzo's unpaid bills now exceed ▮▮▮▮▮▮▮▮▮▮▮ (at the agreed upon reduced rate) and ▮▮▮▮▮▮ (at 100%) in disbursements, for a grand total of ▮▮▮▮▮▮▮▮. (*See id.* ¶ 46, Exs. 5-16.) Enzo counters that its failure to pay the outstanding ▮▮▮▮▮▮▮▮ stemmed, at least in part, from objections to the bills' fairness, including that the invoices were "too vague to be analyzed" and GT staffed the cases with a "revolving door" of inexperienced lawyers. (*See* Enzo Br. at 3-5; Affidavit of Michael J. Brychel, dated July 16, 2014, ¶¶ 21-29.) Although the Engagement Letter expressly specifies procedures for payment following GT's "for cause" withdrawal, the Engagement Letter does not set out a particular course for resolving timely disputes concerning the reasonableness of GT's bills — which are, for the most part, limited to the relatively short period from September 2013 through April 2014. (*See* Burrows Decl., ¶ 39, Ex. 16.) Nonetheless, neither party challenges the Court's authority to review the unpaid bills of ▮▮▮▮▮▮▮▮ to determine the reasonable value of GT's services. *Sequa Corp.*, 156 F.3d at 149 ("[T]he determination of the reasonable value of the attorney's services is a matter within the sound discretion of the trial court." (citation and internal quotation marks omitted)). This the Court will endeavor to do. However, even if the Court took the most extreme position and deemed the *entire*

---

[5] Although GT has not expressly made this argument, presumably GT would also be entitled to full payment on the outstanding fees and disbursements, *i.e.*, ▮▮▮▮▮▮▮▮ before calculation of the withdrawal fee. Otherwise, a non-paying client would be entitled to a significant windfall while paying the same ▮▮▮▮▮▮▮▮▮▮▮▮ which is based on the total *billed* fees and disbursements. If that is correct, and there is nothing in the language of the Engagement Letter to suggest otherwise, GT would be entitled to a total of ▮▮▮▮▮▮▮▮.

7

sum of ▮▮▮▮ to be improperly billed, Enzo would *still* be liable for at least ▮▮▮▮ ▮▮▮▮.[6]

In addition to reserving decision with respect to the ▮▮▮▮ in unpaid bills, the Court finds that an additional question remains concerning the proper interpretation of the Engagement Letter. Assuming GT's withdrawal triggered the ▮▮▮▮, is GT required ▮▮▮▮? For example, should ▮▮▮▮ be considered an offset to GT's charging lien? In addition, the parties have not specifically addressed the effect, if any, of the parties' agreement to further discount GT's fees incurred from April to July 2013. (*See* Burrows Decl., ¶¶ 24-28, Ex. 3.) Because these issues could affect the total amount of the charging lien, the Court believes it would benefit from limited supplemental briefing on these points.[7]

### III. CONCLUSION

Given the complexity and history of this litigation, the Court cannot determine the full value of GT's charging lien without further input from the parties. Accordingly, IT IS HEREBY ORDERED THAT, no later than January 12, 2015, the parties shall submit supplemental briefing, not to exceed ten pages each, that addresses the Court's above-articulated questions. IT IS FURTHER ORDERED THAT the parties shall, by January 12, 2015, submit a joint letter to the

---

[6] Because Enzo has already paid GT ▮▮▮▮ in fees and disbursements, and because Enzo has not proffered evidence that it timely objected to those bills, the Court finds that Enzo is effectively estopped from arguing that those fees and disbursements should now be further discounted for purposes of the ▮▮▮▮.

[7] It is worth noting that GT apparently is prepared to accept the following alternative arrangement: unpaid legal fees and expenses in the amount of ▮▮▮▮ ▮▮▮▮ any recoveries realized in *Roche* and *MPI*. Because *Roche* and *MPI* are pending, the Court has no way of knowing how this alternative compares — dollar for dollar — with what GT might be entitled to pursuant to the Engagement Letter or under Enzo's proposed *quantum meruit* approach. In any event, even if the Court could make a meaningful value comparison, the Court would be powerless to enforce such an arrangement absent an agreement by the parties. *See Universal Acupuncture Pain Servs., P.C. v. Quadrino & Schwartz, P.C.*, 370 F.3d 259, 263 (2d Cir. 2004) ("If the lawyer is discharged without cause and prior to the conclusion of the case . . . he or she may recover either (1) in *quantum meruit*, the fair and reasonable value of the services rendered, or (2) a contingent portion of the former client's ultimate recovery, *but only if both of the parties have so agreed.*" (emphasis added)).

8

Court providing mutually convenient times for a meet and confer session to be held at the Thurgood Marshall Courthouse. The letter should indicate whether the parties would like Magistrate Judge Gorenstein or the undersigned to facilitate this session.

This Order shall be filed under seal for the same reasons articulated above and in the Court's March 18th Order. Given the presumption in favor of open records applicable to court documents, *see Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006), IT IS FURTHER ORDERED THAT, by January 12, 2015, the parties shall submit via email a jointly proposed redacted version of this Order as well as proposed redacted versions of the memoranda and declarations submitted in connection with this motion. Upon approval by the Court, the redacted versions will be publicly docketed in the Enzo matters.

SO ORDERED.

DATED:  December 30, 2014
        New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

9