TO BE FILED UNDER SEAL
FOR *IN CAMERA* REVIEW

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ENZO BIOCHEM, INC., et ano.,                               :
                                                           :
                            Plaintiffs,                    :
        v.                                                 :       03 Civ. 3816 (RJS)
                                                           :
MOLECULAR PROBES, INC.,                                    :
                                                           :
                            Defendant,                     :
-----------------------------------------------------------X
ENZO BIOCHEM, INC., et ano.,                               :
                                                           :
                            Plaintiffs,                    :
        v.                                                 :       03 Civ. 3817 (RJS)
                                                           :
PERKINELMER, INC., et ano.,                                :
                                                           :
                            Defendants,                    :
-----------------------------------------------------------X
ROCHE DIAGNOSTICS GMBH, et ano.,                           :
                                                           :
                            Plaintiffs,                    :
        v.                                                 :       04 Civ. 4046 (RJS)
                                                           :
ENZO BIOCHEM, et ano.,                                     :
                                                           :
                            Defendants.                    :
-----------------------------------------------------------X

## GREENBERG TRAURIG'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO
## <u>DETERMINE THE VALUE OF ITS CHARGING LIEN</u>

TO BE FILED UNDER SEAL
FOR *IN CAMERA* REVIEW

Greenberg Traurig ("GT") respectfully requests the Court to set the value of GT's charging lien on any recovery by Enzo Biochem, Inc. and Enzo Life Sciences, Inc. (collectively "Enzo") in the above-captioned cases (the "Actions") for the reasons set forth below.

For the past ten years, GT has represented Enzo in the Actions and five other related cases (collectively the "Enzo Litigation"). The 2004 Engagement Letter between Enzo and GT provides that during the pendency of the Enzo Litigation, GT would bill Enzo only ▓▓▓ of the firm's normal billing rates. In accordance with this agreement, and on a monthly basis throughout the ten-year history of the Enzo Litigation, GT billed Enzo ▓▓▓ of its normal billing rates. To compensate GT for financing ▓▓▓ of the fees, the agreement provides that upon completion of the litigation, Enzo would pay GT an additional amount equal to the greater of ▓▓▓ of the billed fees and disbursements or ▓▓▓ of any recovery, as defined. To protect GT from being divested of its investment in the Enzo Litigation, Enzo also agreed that, in the event GT withdrew from representation of Enzo in the Enzo Litigations for "good cause," Enzo would pay GT an amount equal to ▓▓▓ of the fees and disbursements billed by GT to Enzo.

The Court in its Sealed Memorandum and Order dated May 9, 2014 ("Order") granted GT's motion to withdraw from the Enzo Litigation and determined that GT's withdrawal was for "good cause." Therefore, pursuant to the Engagement Letter, GT's charging lien should be calculated as an amount equal ▓▓▓ fees and disbursements billed by GT to Enzo during the Enzo Litigation.

However, if the Court determines that Enzo has not agreed through the Engagement Letter to this charging lien amount, and that a determination under the theory of *quantum meruit* or "fairness" is necessary, the Court should value the charging lien at an amount equal to the fees and disbursements that have been billed to Enzo, but which

TO BE FILED UNDER SEAL
FOR *IN CAMERA* REVIEW

remain unpaid,          *PerkinElmer* settlement and           proceeds that Enzo may receive from the *Roche* and *Molecular Probe* cases.

## BACKGROUND

Since May 2004, when GT assumed Enzo's representation in the Enzo Litigation from prior counsel, attorneys in GT's intellectual property and commercial litigation groups have prosecuted these actions. The Enzo Litigation is a series of eight highly complex patent infringement and breach of contract cases involving (1) nine of Enzo's patents, (2) multiple distribution agreements, and (3) hundreds of products. Burrows Declaration ¶ 9.

**The Engagement Letter**

Commensurate with the complexity and difficulty of the Enzo Litigation, Enzo and GT entered into a detailed Engagement Letter. Exh. 1 to Burrows Declaration. The agreement sets forth in detail the rights and obligations of the parties during GT's representation of Enzo in the Enzo Litigation and after the termination of the representation.

As provided in the Engagement Letter, GT billed Enzo          normal billing rates during the ten-year period of its representation of Enzo in the Enzo Litigation.[1] The Engagement Letter also provides that GT, upon the termination of the Enzo Litigation, may elect to receive the greater          billed fees and disbursements          "recovery" received by Enzo, less any payment of any recovery previously received by GT.

This backend payment is designed to compensate GT for accepting only 49% of the fees during the pendency of the Enzo Litigation and financing the          As provided in the Engagement Letter:

---

[1] As an accommodation to Enzo, four very busy months in 2013 were          Burrows Declaration ¶¶ 24-28.

> Promptly following the termination of the lawsuits, as long as the litigation at any time has resulted or will result in a Recovery, GT will receive, at its sole discretion, the greater           recovery or            and disbursements billed to Enzo in connection with this case from the outset through termination (less any amounts previously received by GT as a Recovery in connection with this case).

Exh. 1 to Burrows Declaration at 1-2.

To protect GT from being wrongfully divested of its investment in the Enzo Litigation, the Engagement Letter provides for payment to GT in the event that GT withdraws for "good cause." In particular, the agreement provides that Enzo will pay GT, at GT's election, the greater                GT billed to Enzo during the Enzo Litigation

*Id.* at 2. As noted above, the Court granted GT's motion to withdraw and determined that GT's withdrawal was for "good cause." Order at 7.

**Enzo's Failure To Pay Fees And Expenses**

Beginning with September 2013, Enzo ceased paying GT's legal fees, and has not paid any of these fees since then. Enzo also failed to pay most of the expenses incurred by GT during that same period. During the eight-month period from September 2013 through April 2014, prior to the Order, GT billed              in fees, all of which remains unpaid. For the same period, GT incurred and billed expenses in the amount               of which            unpaid. In all, GT is owed              in fees and expenses.[2] Burrows Declaration ¶ 46 and Exh. 16 thereto.

---

[2] The total owed includes additional unpaid fees and disbursements from November 2012 and unpaid disbursements from April and May 2014. Burrows Declaration ¶ 39, n.8.

TO BE FILED UNDER SEAL
FOR *IN CAMERA* REVIEW

### The Work Performed For Which GT Has Not Been Paid

The extensive and intensive work during the eight-month period from September 2013 through April 2014, for which GT has not been paid, is described in detail in the accompanying declaration of Jeffrey R. Mann, dated June 25, 2014, ¶¶ 14-32.

### The Motion To Withdraw

In March 2014, GT moved to withdraw from the representation of Enzo based on

On April 21, 2014, the Court held a hearing on the motion. On May 9, 2014, the Court granted GT's motion to withdraw and confirmed GT's statutory right to a charging lien. As stated in the Order,

Order at 6. The Court also determined that GT's withdrawal was for "good cause." *Id.* at 7. The Court deferred setting the value of the charging lien pending a request from GT. *Id.* at 8.

GT submitted a request to set the value of the charging lien in its pre-motion letter of May 28, 2014, and the Court at the June 5, 2014 conference directed that "we can dispense with the pre-motion letter requirements because the issue is pretty well tee'd up" and allowed GT to submit its motion to fix the value of the charging lien. Conf. Tr. at 9. The Court further directed that GT submit its motion by June 25, 2014. Order dated June 16, 2014.

The facts supporting the determination of the value of the charging lien are fully set forth in the accompanying Declarations of Michael Burrows and Jeffrey R. Mann, both dated June 25, 2014. In the interest of brevity, they will not be repeated here, but are referred to as appropriate.

TO BE FILED UNDER SEAL
FOR *IN CAMERA* REVIEW

## ARGUMENT

### POINT I

#### GT Should Be Awarded A Charging Lien In The Amount Agreed To By Enzo

Pursuant to the express language of the Engagement Letter, GT is entitled to a payment from Enzo ⬛⬛⬛ fees and disbursements billed by GT to Enzo when, as the Court has determined here, GT has withdrawn for "good cause." As provided in the Engagement Letter:

> Enzo understands and agrees that GT may withdraw as counsel for Enzo for good cause. "*Good Cause*" shall include without limitation, the failure of Enzo to cooperate with its attorneys or comply with this Agreement, or their request that GT or its attorneys act in a manner that would violate the Rules of Professional Conduct. Such withdrawal shall not affect Enzo's obligations to reimburse GT for costs previously incurred. Enzo may terminate this Agreement for good cause with thirty days written notice to GT. Upon termination or withdrawal, GT, at its sole option, will be paid the greater of ⬛⬛⬛ less any Recovery amounts previously received by GT in connection with this case, or ⬛⬛⬛ billed to Enzo, to be paid within fifteen (15) days. This means ⬛⬛⬛ of whatever Enzo receives as a result of such Recovery for the entire period during which such Recovery is paid.

Exh. 1 to Burrows Declaration.

By virtue of this agreement, Enzo has fixed the amount of the charging lien to which GT is entitled in an amount equal to ⬛⬛⬛ billed by GT to Enzo during the Enzo Litigation. *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.2d 442, 453 (2d Cir. 1998) ("If the amount of the charging lien has been fixed by agreement, as here, execution is appropriate on the judgment for the amount agreed to by the parties"). Here, during the past ten years of GT representation in the Enzo Litigation until its withdrawal for "good cause," GT billed Enzo a total ⬛⬛⬛ (calculated ⬛⬛⬛ of GT's normal billing rates) and disbursements in the amount of ⬛⬛⬛ for a total

5

Doc. # DC-8378038 v.1

TO BE FILED UNDER SEAL
FOR *IN CAMERA* REVIEW

Burrows Decl. ¶ 15 and Exh. 2 thereto. GT is thus entitled to a charging lien in the amount of ▓▓▓ as the stipulated amount.

GT recognizes that this is a significant sum to be fixed at this time, when the damages Enzo may recover from the *Roche* and *Molecular Probe* cases have not been determined. In view of this, GT is prepared to accept the alternative charging lien amount described below in Point II.

## POINT II

### GT Should Be Awarded Its Outstanding Fees And Expenses, Plus An Appropriate Contingency Payment

During the eight-month period from September 2013 through April 2014, GT expended more than 17,000 hours of work and billed Enzo ▓▓▓ for those hours, for a total ▓▓▓ in fees. Mann Declaration ¶ 14; Burrows Declaration ¶ 46 and Exh. 16 thereto. Enzo has not paid any of those fees. GT also billed Enzo during this eight-month period for expenses totaling ▓▓▓ of which ▓▓▓ remains unpaid. Enzo thus owes GT outstanding fees and disbursements in the amount ▓▓▓.[3]

GT is prepared to accept this amount, plus ▓▓▓ payment from the recent settlement with PerkinElmer, together with a fair continuing contingency interest in the *Roche* and *Molecular Probe* cases. Based on public filings that the *PerkinElmer* case has been settled for $7,000,000, GT would be entitled to receive ▓▓▓ from that settlement. Burrows Declaration ¶¶ 58-62. This contingency fee amount should be included because GT prepared the *PerkinElmer* case so that it was for ready trial and GT was ready to proceed with the trial.

---

[3] The total owed includes additional unpaid fees and disbursements from November 2012 and unpaid disbursements from April and May 2014. Burrows Declaration ¶ 39, n.8. *See* footnote 2, *supra*.

6

Burrows Declaration ¶ 61. Successor counsel's work in the *PerkinElmer* case apparently included only finalizing and drafting the settlement document, after GT had prepared the case for trial and positioned Enzo for a negotiated resolution. Indeed, as early as the April 21, 2014, hearing on GT's motion to withdraw, Enzo advised the Court that GT should not be allowed to withdraw because "PerkinElmer and Enzo were very close to reaching a settlement" and "*PerkinElmer* can be settled in short order." April 21, 2014 hearing transcript at 5. Enzo also told the Court in its letter of April 29, 2014 that it "plans"                the PerkinElmer settlement. Letter of Jeffrey S. Eberhard dated April 29, 2014.[4]

GT should also be granted          interest in the *Roche* and *Molecular Probe* cases in consideration of the facts that GT financed          the legal services delivered by GT in the Enzo Litigation and that the largest of the Enzo cases, *Roche*, has yet to be tried. Burrow Declaration ¶¶ 9, 10.

In sum, GT is prepared to accept a fixed amount                       representing the sum of          in unpaid fees and expenses and the          contingency payment from the *PerkinElmer* settlement, plus          contingent interest in the *Roche* and *Molecular Probe* cases.

GT submits that the above amount is fair and reasonable for Enzo.

Were GT to seek payment from Enzo of an amount sufficient to pay GT at its normal billing rates for all services rendered by GT to Enzo throughout the Enzo Litigation, the balance due to GT now would be approximately          -- an amount far exceeding the amount requested here. This larger amount is reasonable and fair under the circumstances here and would be a proper award to GT. *Sutton v. New York City Transit Authority*, 462 F.3d 157, 161 (2d Cir. 2006) ("in the absence of provision in the retainer agreement for counsel to withdraw for

---

[4] A redacted version of this letter is docketed in the *PerkinElmer* case (Doc. No. 259).

cause," courts determine charging lien at a "fair" amount based on several factors such as "the terms of the percentage agreement, the nature of the litigation, difficulty of the cases, time spent, amount of money involved, results achieved and amounts customarily charged for similar services"); *Purchase Partners, LLC v. Carver Fed. Sav. Bank*, 2014 WL 462823, at *2 (S.D.N.Y. Feb. 5, 2014) (same).

The sum that GT actually seeks – payment by Enzo of GT's unpaid discounted fees, unreimbursed expenses and the contingency fees – is even more fair and reasonable.

First, the Engagement Letter provides for a payment      of the billed fees and disbursements, an amount far exceeding what GT proposes it receive under this analysis. Second, the Enzo Litigation is a series of complex cases involving claims of patent infringement and breach of contract, with nine patents, multiple distribution agreements and hundreds of products at issue. Third, GT expended more than 17,000 hours, for which it is seeking payment         together with a fair percentage of Enzo's recovery. Fourth, the amounts at issue in the Enzo Litigation are large, with claimed damages, according to Enzo,           Burrows Declaration ¶ 9. Fifth, due to GT's efforts, Enzo has received          settlement payments thus far, with two cases remaining to be tried, including the *Roche* case which is by far the largest of the Enzo cases. *Id.* Finally, the rates charged by GT are competitive rates in the New York market. Burrows Declaration ¶ 41.

In view of the above, and the fact that GT is seeking an amount much less than what it is entitled to, GT should be awarded the amount sought. *Purchase Partners*, 2014 WL 462823, at *2 (awarding charging lien at amount requested because amount sought is lower than what former client "could fairly and reasonably have been ordered to pay").

TO BE FILED UNDER SEAL
FOR *IN CAMERA* REVIEW

### Conclusion

For the reasons stated above, if the Court concludes that Enzo has not agreed to a charging lien calculated of the billed fees and expenses as provided in the Engagement Letter, then the Court should fix the charging lien (which equals the unpaid discounted legal fees, unreimbursed expenses the *PerkinElmer* settlement amount discussed herein), plus interest in any proceeds from *Roche* and *Molecular Probe*.

Dated: June 25, 2014

STEPTOE & JOHNSON, LLP

By: _____
Michael C. Miller, Esq.
Justin Y. K. Chu, Esq.
1114 Avenue of the Americas
New York, NY 10036
(212) 378-7616 (phone)
(212) 506-3950 (fax)
*Attorneys for Greenberg Traurig, LLP*