TO BE FILED UNDER SEAL AND REVIEWED *IN CAMERA*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ENZO BIOCHEM, INC., et ano.,                :    03 Civ. 3816 (RJS)
                                            :
                    Plaintiffs,             :
        v.                                  :
                                            :
MOLECULAR PROBES, INC.,                     :
                                            :
                    Defendant,              :
-----------------------------------------------------------X
ENZO BIOCHEM, INC., et ano.,                :    03 Civ. 3817 (RJS)
                                            :
                    Plaintiffs,             :
        v.                                  :
                                            :
PERKINELMER, INC., et ano.,                 :
                                            :
                    Defendants,             :
-----------------------------------------------------------X
ROCHE DIAGNOSTICS GMBH, et ano.,            :    04 Civ. 4046 (RJS)
                                            :
                    Plaintiffs,             :    **DECLARATION OF JEFFREY R. MANN**
        v.                                  :    **IN SUPPORT OF GREENBERG TRAURIG**
                                            :    **LLP's MOTION TO DETERMINE THE**
ENZO BIOCHEM, et ano.,                      :    **MONETARY VALUE OF ITS CHARGING LIEN**
                                            :
                    Defendants,             :
-----------------------------------------------------------X

JEFFREY R. MANN, hereby declares, as follows:

    1.   I am a member of the Bar of the State of New York, having been admitted to practice in 1969, and to the Bar of this Court in 1972. I am a shareholder in the New York office of Greenberg Traurig LLP ("GT").

    2.   I submit this Declaration in support of GT's motion to determine the monetary value of its charging lien as set forth in the Court's Sealed Memorandum and Order, dated May

1

9, 2014 ("Order"). A copy of the Order (unredacted) is annexed as Exhibit 1 to the accompanying declaration of Michael Burrows dated June 25, 2014 (the "Burrows Declaration"). Also submitted in support of GT's motion is a Memorandum of Law, dated June 25, 2014.

**Background Facts**

3. Beginning in late November 2012, I became involved on behalf of Enzo in the non-patent aspects of the six then pending actions, of which the three actions, captioned above, are still pending. Since my entry into these actions, I have been one of the lead attorneys preparing these cases for trial or other disposition.

4. Beginning in December, 2012 when, with the Court's approval, defendants in each of the six cases made motions for summary judgment on non-patent issues, GT's work took on an intensity and focus that was evidenced by increased billing through the participation of several additional lawyers and support staff. At or around the same time, fact discovery and other proceedings as to two Roche patents (the '523 and '830 patents), that had been stayed by Judge Sprizzo, also began in full earnest.

5. As the direction of the cases was now turning to emphasize the non-patent aspects of the cases, and particularly on the contract aspects of Enzo's claims against the defendants, GT lawyers from the general business litigation group became increasingly involved in preparing the opposition to the defendants' motions for summary judgment.

6. Since there were six separate motions made by the six separate defendants, a determination was made to organize the work into groups that could focus both on the differences between and among the motions and on the commonalities presented by them. The six motions were divided into three groups of two motions each with a general litigation partner given primary responsibility for two motions, each partner assisted by two associates, one

assigned to each motion.

7. Additional lawyers and support staff were assigned discrete tasks to conduct focused legal research and document review and review of the record in the cases that had been developed over the many years of consolidated discovery that had been conducted since the inception of the cases.

8. At the end of January, 2013, a conference was held with the Court at which GT requested discovery from defendants to assist in the preparation of Enzo's opposition to the summary judgment motions. That discovery was initially ordered by the Court to be completed by April 11, 2013, with briefing to be completed on the motions by May 15, 2013. The Court announced its intention to have oral argument of the motions in the summer of 2013 and, if trials were necessary thereafter, the first of these was to be held beginning on November 4, 2013, with the next trial to begin on January 13, 2014.

9. Subsequently, the time periods for completion of these several matters were altered. Argument of the motion in the Amersham case was held on August 30, 2013. At the completion of oral argument of that motion, Judge Sullivan announced from the bench that he was likely to grant the motion and he did so in his decision on October 22, 2013.

10. On September 27, 2013, oral argument was heard on PerkinElmer's motion for summary judgment. Again, from the bench, Judge Sullivan announced that he would likely rule by denying the motion in part and granting it in part. Judge Sullivan asked the parties in the PerkinElmer case about remaining discovery to prepare that case for trial and was told that there was to be damages and expert discovery that would require some months to complete.

11. In its decision of October 28, 2013 in the PerkinElmer case, the Court also set the trial of the case for January 13, 2014, the date it had reserved for trial of one of the Enzo cases at

the conference in January 2013. In its order, the Court directed the parties to file a proposed pretrial schedule by November 1, 2013, covering damages and expert discovery and other pretrial matters. Subsequently, the trial date was rescheduled to March 18, 2014, in order to permit additional time to complete discovery and other pretrial proceedings. GT began work immediately and intensively to prepare the PerkinElmer case for trial.

12.     Thereafter, on December 6, 2013, Judge Sullivan decided the remaining motions for summary judgment: granting the motions of Orchid and MPI and granting in part and denying in part the motions of Affymetrix and Roche. The Court set April 14, 2014 as the trial date for the Affymetrix case. That date was later reset for May 12, 2014. In the Roche case, the Court directed the parties to file by December 20, 2013 a proposed pretrial schedule and proposed trial date. Accordingly, work to prepare the Affymetrix case for the May trial and to schedule and complete pretrial matters in the Roche case (both patent and non-patent issues) and to complete work on remaining patent issues in the MPI case was undertaken with considerable intensity.

13.     Thus, the stage was set for the work to bring the PerkinElmer, Affymetrix, and Roche cases to trial in March (PerkinElmer), May (Affymetrix) and late 2014 (Roche), and to complete the remaining work in connection with the patent claims against MPI.

### The Work Performed From September 2013 Through April 2014

14.     During the eight months following the argument of the Amersham motion for summary judgment, GT lawyers and staff accrued an aggregate of more than 17,000 hours of work. Copies of GT's invoices for that work describing the services performed on behalf of Enzo, are attached as Exhibits 5 through 15 to the Burrows Declaration.

## The Last Four Months Of 2013

15. During the last four months of 2013, GT lawyers and staff devoted an average of more than 1,800 hours each month, almost entirely to the three cases being readied for trial, the first of which was scheduled initially for January 13 and then for March 18 and the last of which, Roche, was in the midst of full-on discovery and claim construction proceedings. Significant time was also devoted to the proceedings before the U.S. Patent Office in the MPI case.

16. The Court's decisions in the summary judgment motions in the PerkinElmer, Affymetrix and Roche cases narrowed and focused the issues that were to be tried.

17. With the emphasis now placed on trial preparation for those three matters, plus the separately tracked discovery on Roche's '523 and '830 patents, GT reviewed and analyzed the universe of more than 1 million documents that had been produced by the parties and approximately 79 depositions previously taken during consolidated fact discovery, in order to make decisions on the myriad issues necessary for trial readiness.

18. During the fall of 2013, following the Court's summary judgment decisions in the PerkinElmer and Affymetrix cases, it was necessary to determine the scope of needed damages discovery on the remaining claims and then to initiate and conduct the discovery and to prepare the cases for trial. This work included (a) extensive third party discovery relating to damages, (b) preparing Enzo witnesses for their testimony at depositions during remaining discovery requested by defendants, (c) instructing experts retained in several fields on relevant factual matters, (d) preparing orders of proof, (e) continuing the process of identifying fact witnesses and preparing the documents and deposition testimony necessary for their trial preparation, (f) preparing the memoranda of law on the numerous legal issues that would likely be addressed during the final pretrial proceedings in each of the cases and at their trials, including motions *in*

*limine*, likely Daubert motions, and many evidentiary issues, and, of course, (g) the preparation of the detailed Pretrial Orders in the cases.

19. As discovery demands were served by counsel to Enzo and the defendants in these cases and then responded to, the extensive new document production was reviewed, shared, as appropriate with Enzo's experts, and depositions of relevant witnesses was prepared for, taken and defended.

20. During the same four months, in the Roche case, GT attorneys and staff prepared for taking and defending over a dozen fact and Rule 30(b)(6) depositions in different locations across the U.S. and in Germany, as well as reviewed and prepared extensive document productions, discovery responses and privileged document logs on patent and non-patent issues. In connection with these efforts, the parties became embroiled in multiple discovery disputes that were negotiated, with several requiring the preparation of joint letter motions to compel Roche to comply with Enzo's discovery requests, to strike untimely Invalidity Contentions, and for reconsideration of the Court's summary judgment decision.

21. Attached hereto as Exhibit 1 are schedules showing the 36 depositions taken and defended during the period from August 1, 2013 and April 30, 2014, the 79 third party subpoenas noticed during that period, and the volume of documents produced in discovery during this period by the parties, and a list of the motions made and responded to by Enzo during that time. These do not include several other witnesses, including two former Enzo scientists (named inventors on the patents-in-suit, Drs. Brakel and Stavrianopoulos), whose depositions were noticed by Roche and prepared by the GT legal team, but whose depositions never proceeded.

22. GT attorneys and staff also handled the claim construction proceedings with

respect to the '523 and '830 patents, including the identification and negotiation of disputed claim terms requiring construction by the Court and the preparation of briefs and corresponding supporting expert declarations and evidence in support of Enzo's claim construction positions. In this same general timeframe, GT attorneys negotiated and attempted to reach agreement with Roche's counsel on a stipulation with respect to the '830 patent, and they prepared for and represented Enzo in a Court-ordered mediation conference.

23. In the MPI case from September through December, GT's patent lawyers handled a Patent Office reexamination proceeding with respect to the '060 patent and prepared briefs and other joint letters in opposition to MPI's request to renew its summary judgment motion in connection with that Patent Office reexamination and in opposition to the renewed summary judgment motion after the Court granted leave to MPI to file it.

### The First Four Months Of 2014

24. In January 2014, work in the PerkinElmer case intensified further as the trial approached. Third party damages discovery was proceeding at a significant pace. Although it was being conducted by independent counsel (see Burrows Declaration ¶¶ 51-54), the products of that discovery needed to be assimilated into the growing universe of evidence to be used at trial of that case. Motion practice to compel discovery from several entities (including Orchid and MPI), preparation of expert reports, preparation for and defense of depositions of experts and the depositions of Enzo's 30(b)(6) witnesses regarding damages, moved forward at great speed and intensity.

25. At the same time, in the Roche litigation, the GT legal team also prepared and filed Enzo's responsive claim construction brief and supporting expert declaration and other evidence, while pursuing, obtaining and reviewing Court-ordered discovery from Roche which it

had failed to timely provide.

26. In February and early March 2014, with the trial date in PerkinElmer just weeks away, the pace of the work became extraordinary, with multiple depositions taking place simultaneously and document productions being made across the United States. The Pretrial Order was being finalized including, extensive deposition designations, preparation of trial exhibits, jury instructions, voir dire, and jury verdict questionnaires being prepared. Once Enzo's and PerkinElmer's Pretrial Orders were exchanged, the PerkinElmer team at GT prepared counter deposition designations, objections to trial exhibits, objections to jury instructions and proposed voir dire to the Pretrial Order draft delivered by PerkinElmer's lawyers. In addition, extensive motions *in limine* and Daubert motions were prepared and responded to.

27. On March 5, 2014, the Court issued an Order adjourning the trial in the PerkinElmer case without date and directing the parties to a pretrial conference on March 18; the date on which the trial was to have begun. Even with the trial date adjourned, work continued intensively in March to revise the Pretrial Order, to complete responses to pending Daubert and *in limine* motions, and to prepare witnesses for trial testimony.

28. During this same period, work intensified in connection with the Affymetrix case as the scheduled trial in that case approached. A motion for reconsideration of the summary judgment decision was made in December 2013, with a Reply brief prepared and filed in January 2014. Damages discovery was conducted through document requests and depositions of Affymetrix, Enzo and third party witnesses. The Pretrial Order for the Affymetrix trial was being drafted and the necessary work in connection with that effort was well under way.

29. With respect to MPI, the GT legal team also drafted and filed an appeal from the Patent Office reexamination decision regarding Enzo's '060 patent.

30. In mid-March, having endured by then six months during which Enzo had not paid any of our invoices and had even stopped paying our out-of-pocket expenses, GT moved to withdraw from further representation of Enzo in these cases.

31. Notwithstanding that decision, and mindful of its ethical obligations to Enzo and to the Court, GT continued with substantial efforts to make the Affymetrix and PerkinElmer cases ready for trial and to continue work already undertaken in the MPI and Roche cases. (See, e.g., Burrows Declaration ¶ 35) This work included the preparation and filing of a motion for reconsideration of the Court's prior claim construction ruling with respect to Enzo's '767 patent in view of the recent Patent Office reexamination decision, and specifically Reasons for Allowance, as to the scope and validity of those same claims.

32. Finally, in April, with work on the Affymetrix case moving at top speed, settlement efforts in that case developed traction and, by the third week in April, seemed likely to be fruitful. On April 21, the Court held a hearing on GT's withdrawal motion. At the conclusion of the hearing, the Court reserved it decision. Because of the reservation, work continued in all of the cases in which GT was counsel of record in the belief that these cases were GT's responsibility until the court reached a decision on the motion to withdraw.

I declare under penalties of perjury that the foregoing is true and correct.

Dated: June 25, 2014

_____
Jeffrey R. Mann